THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No 185149)
Special Assistant United States Attorney
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-5339
     Facsimile:  (213) 894-3713
     Email: shawn.nelson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 09-00328-R |
| Plaintiff, | ) [PROPOSED] FINDINGS OF FACTS AND |
| | ) CONCLUSIONS OF LAW RE: DEFENDANT'S |
| v. | ) MOTION TO SUPPRESS EVIDENCE |
| LUIS ALBERTO CASTRO, | ) |
| Defendant. | ) |

I.    INTRODUCTION

     Defendant is charged in a two-count indictment with a
violation of Title 18, United States Code, Section 922(g),
Prohibited Person in Possession of a Firearm, and a violation of
Title 18, United States Code, Section 922(k), Possession of a
Firearm Bearing an Obliterated Serial Number.  The charges arise
from defendant's arrest on October 14, 2008, in the City of Los
Angeles, following a traffic stop of a vehicle in which defendant
was a passenger.  During the traffic stop, officers saw
defendant, who was sitting in the front passenger seat, throw
something to the person in the left rear passenger seat.  That

1  item was later found to be a loaded firearm with an obliterated
2  serial number.

3      On May 18, 2009, defendant filed a Motion to Suppress
4  Evidence, which sought to suppress all evidence seized as a
5  result of the traffic stop.  Defendant argued that there was no
6  reasonable suspicion for the traffic stop and the traffic stop
7  was unreasonably prolonged.

8      On May 26, 2009, the government filed its opposition to
9  defendant's Motion to Suppress Evidence.  The government argued
10  that the traffic stop was valid because it was based on a warrant
11  on the vehicle.  The government further argued that the search of
12  the vehicle was proper because an officer saw the firearm in
13  plain sight.

14      On June 1, 2009, defendant filed a reply in support of his
15  Motion to Suppress.  Defendant argued that the traffic stop was
16  not supported by reasonable suspicion because the warrant was not
17  for the registered owner of the vehicle, the warrant was ten
18  months old, and the officers had no reason to believe the subject
19  of the warrant was in the vehicle.  Defendant also argued that
20  the stop exceeded the scope of a Terry stop and that the officers
21  did not find the firearm in plain view.

22      A hearing on this motion was held on June 8, 2009.  The
23  declarations of Officers Gutierrez and Ziegler were accepted as
24  their testimony.  Defendant called the officers for further
25  examination and both parties examined the officers.  Defense
26  witness Ana Vasquez' declaration was accepted as her testimony
27  and both parties examined Ms. Vasquez.

28      The court has throughly reviewed all the papers filed by the

2

1  parties, heard and evaluated the testimony of the witnesses in
2  their declarations and at the hearing, and considered the
3  arguments of counsel.  For the following reasons, defendant's
4  Motion to Suppress Evidence is DENIED.

5  II.   STATEMENT OF FACTS

6      On October 14, 2008, LAPD Officers Zeigler and Gutierrez
7  were finishing An investigation in the area of Santa Monica
8  Boulevard and Berendo Avenue in the City of Los Angeles.  The
9  officers observed a burgundy Ford Explorer stop on Santa Monica
10 Boulevard and signal a turn towards the officers.  The occupants
11 of the Explorer looked in the direction of the officers and at
12 least one of the occupants appeared startled.  The Explorer then
13 continued westbound on Santa Monica Boulevard instead of
14 performing its signaled turn.  Officers Zeigler and Gutierrez
15 then got in their police car and followed the Explorer.  Officer
16 Zeigler ran the Explorer's license plate number for wants and
17 warrants and found a misdemeanor warrant on the vehicle.  The
18 warrant was for a male Hispanic who was 5'6" tall and weighed 185
19 pounds.  The warrant indicated that it was for violations of
20 California Vehicle Code Sections 40508 (failure to appear) and
21 12500 (unlicensed driving).  The name on the warrant was Jose
22 Leon Raz, who was not the registered owner of the vehicle.  The
23 information in the warrant indicated that it had been issued
24 approximately ten months prior.  Officer Zeigler noted that the
25 front passenger in the Explorer appeared to be a male Hispanic
26 about 5'6".  The officers then conducted a traffic stop based on
27 the warrant.

28      Officer Zeigler approached the Explorer on the passenger

1 │ side and Officer Gutierrez approached the Explorer on the
2 │ driver's side.  As the officers approached the Explorer, each
3 │ officer saw the front passenger, later identified as defendant,
4 │ reach down to the floorboard and apparently retrieve an item.
5 │ Defendant then held the item up in front of him.  The item
6 │ appeared to be a grey sweatshirt, however, it appeared that the
7 │ sweatshirt contained a heavy object because of the way defendant
8 │ was cradling it with both hands.

9 │    Defendant then gripped the item inside the sweatshirt with
10 │ both hands and tossed it over his left shoulder to the rear
11 │ passenger, later identified as Edwin Perez.  As Edwin Perez
12 │ caught the sweatshirt, Officer Gutierrez saw a dark object fall
13 │ from inside the sweatshirt onto the rear passenger side
14 │ floorboard.  Both officers then observed Edwin Perez attempt to
15 │ shove the dark object underneath his seat with his feet.

16 │    Based on these observations, each officer formed the opinion
17 │ that defendant and Perez might be arming themselves or trying to
18 │ conceal a weapon.  Thus, the officers ordered all of the
19 │ occupants out of the car.  Defendant, Edwin Perez, and the
20 │ driver, Ana Vasquez, each got out of the car.  Officer Gutierrez
21 │ covered the occupants of the car while Officer Zeigler looked
22 │ into the left rear floorboard area.  Officer Zeigler saw the wood
23 │ grips of a blue steel revolver on the rear passenger side
24 │ floorboard.  This revolver was the only item on the floorboard.
25 │ Officer Zeigler examined the revolver and noticed that it was
26 │ loaded with six rounds of ammunition, appeared to be operable,
27 │ and bore an obliterated serial number.
28 │ \\\

4

1  III. RULINGS

2       A.    THE OFFICERS HAD REASONABLE SUSPICION TO STOP THE CAR
3             IN WHICH DEFENDANT WAS A PASSENGER.

4       Police officers may, consistent with the Fourth Amendment,
5  make an investigatory stop of person when the officers have
6  reasonable suspicion based on specific and articulable facts that
7  the person is or has been involved in a crime.  <u>United States v.</u>
8  <u>Hensley</u>, 469 U.S. 221, 226 (1985).  In applying this test in a
9  particular circumstance a court should be guided by the standard
10 of reasonableness embodied in the Fourth Amendment, which
11 balances the nature and quality of the intrusion on personal
12 security against the importance of the governmental interests
13 alleged to justify the intrusion.  <u>Id.</u>, at 228.  The Fourth
14 Amendment does not require a policeman who lacks the precise
15 level of information necessary for probable cause to arrest to
16 shrug his shoulders and allow a criminal to escape.  <u>Adams v.</u>
17 <u>Williams</u>, 407 U.S. 143, 145 (1972).  Rather, a brief stop in
18 order to determine identity while obtaining more information may
19 be reasonable.  <u>Id.</u> at 146.

20      Under these standards, the traffic stop of defendant's
21 vehicle was reasonable.  The officers observed the vehicle signal
22 its intention to turn from Santa Monica Boulevard toward the
23 officers.  The officers saw the occupants of the vehicle, which
24 included a female driver and male Hispanic front passenger, look
25 in their direction.  At least on of the occupants appeared to be
26 startled by the officers' presence.  The vehicle then abandoned
27 its turn and continued straight on Santa Monica Boulevard.  The
28 officers pulled behind the vehicle and ran the vehicle's license

1 | plate number through their in-car computer.   In response to this
2 | query, the officers found an arrest warrant linked to the
3 | vehicle.   The description of the subject of the warrant was
4 | similar to the front passenger of the vehicle.   Because the
5 | subject of the warrant was not the registered owner of the
6 | vehicle, it would make sense that he might not be the driver of
7 | the vehicle on this occasion.   Thus, the officers were justified
8 | in stopping the vehicle to determine the identity of the
9 | occupants.

10 |     The reasonableness of the officers' actions in the present
11 | case is highlighted when compared to the actions of the officers
12 | in the similar situation considered by the Supreme Court in
13 | Hensley.   In Hensley an officer stopped a vehicle because he
14 | believed an occupant was involved in prior criminal activity
15 | based on a "wanted flyer" issued by another jurisdiction.
16 | Hensley, supra, at 223-224.   In upholding the officers' detention
17 | of the suspect, the Supreme Court in Hensley specifically
18 | considered that "where plice have been unable to locate a person
19 | suspected of involvement in a past crime, the ability to briefly
20 | stop that person, ask questions, or check identification in the
21 | absence of probable cause promotest he strong government interest
22 | in solving crimes and bringing offenders to justice."   Id., at
23 | 229.   Thus, in this case, where the officers were relying on an
24 | arrest warrant, which necessarily rests upon a judge's finding
25 | that there is probable cause that the subject of the warrant
26 | committed an offense, the officers were justified in briefly
27 | stopping the vehicle linked to that warrant to ask questions or
28 | check identification.

1    Furthermore, the California Court of Appeals has addressed a
2  nearly identical situation and found that the officers acted
3  properly.   In People v. Williams, 33 Cal. App. 4th 467 (2nd App.
4  Dist. 1995), Los Angeles County Deputy Sheriffs randomly checked
5  the license plate of the vehicle in front of them.   That inquiry
6  told them that there was a warrant linked to the vehicle for
7  failure to appear based on an expired registration.   Id., at 473.
8  The deputies then conducted a traffic stop to ascertain if the
9  person named in the warrant was an occupant of the vehicle.   Id.
10 During the traffic stop the officers smelled marijuana and a
11 subsequent search of the vehicle yielded marijuana and cocaine.
12 Id. at 474.   In upholding the initial stop of the vehicle, the
13 court noted "The United States Supreme Court has held that,
14 consistent with the Fourth Amendment, police may make an
15 investigatory stop of a person, in the absence of probable cause
16 to arrest, when the police have a reasonable suspicion, based on
17 specific and articulable facts that the person stopped has been
18 involved in a crime."   Id., at 476, citing, Hensley; internal
19 quotation marks omitted.   The court continued, "A momentary stop
20 of an automobile by police to investigate a passenger reasonably
21 believed to be involved in a past crime is proper.   It creates a
22 minimal inconvenience to the driver of that automobile, when
23 balanced against the government's interest in apprehending
24 criminals.   The governmental interest includes apprehending
25 individuals with outstanding arrest warrants."   Id., at 476-477,
26 citations omitted.

27    Similarly, in this case, the minor inconvenience of a
28 traffic stop is outweighed by the government's interest in

7

1 | apprehending individuals with outstanding arrest warrants.

2 |        B.    THE DETENTION OF DEFENDANT WAS NOT UNDULY PROLONGED AND
3 |             THE OFFICERS OBSERVED THE FIREARM IN PLAIN VIEW FROM A
            PUBLIC STREET.

The officers observations of defendant and the left rear passenger were made as they approached the vehicle to investigate the identity of the occupants of the vehicle. These facts justified the officers in ordering the occupants out of the car. Thus, the traffic stop was not unduly prolonged.

Because traffic stops are fraught with danger to police officers may minimize the risk of harm by exercising "unquestioned command of the situation." Maryland v. Wilson, 519 U.S. 408, 414 (1997), quoting, Michigan v. Summers, 452 U.S. 692, 695 (1981). Once a motor vehicle has been lawfully detained, the officers may order the driver and passengers to get out of the vehicle without violating the Fourth Amendment. Pennsylvania v. Mimms, 434 U.S. 106 (1977); Wilson, at 413-414. This rule is justified by the weighty interest in officer safety. Wilson, at 413-414.

Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Officer Zeigler was lawfully standing in a public street when he saw the firearm in the Explorer.

IV.   CONCLUSION

The court finds that (1) Officers Zeigler and Gutierrez had reasonable suspicion to stop the Explorer to determine if the

1   front passenger was the subject of the warrant on the vehicle's
2   license plate; (2) because the officers saw defendant and Edwin
3   Perez's actions while they were approaching the vehicle to
4   conduct their investigation, the detention was not unduly
5   prolonged and the officers were justified in ordering the
6   occupants out of the car; and (3) Officer Zeigler saw the firearm
7   in plain view while he was standing on a public street.

8        Accordingly, defendant's motion to Suppress Evidence is
9   DENIED in its entirety.  It is so FOUND and ORDERED.  The findings
10  fo fact and conclusions of law stated in this ORDER shall
11  supplement the findings of fact and conclusions of law previously
12  stated by the Court at the evidentiary hearing on the Motion to
13  Suppress Evidence.

14

15  DATED: June 12, 2009,              _____
16                                     HONORABLE MANUEL L. REAL
                                       UNITED STATES DISTRICT JUDGE

17  Submitted by:

18        _____/S/_____
    SHAWN J. NELSON
19  Special Assistant United States Attorney

20

21

22

23

24

25

26

27

28

9